Marshall agt. Peters.

## SUPREME COURT.

### EDWIN MARSHALL agt. ISAAC F. PETERS.

Where it appears that a plaintiff's *grievance*, upon which he asks an *injunction*, is such that he may amply and readily be recompensed by damages, to be recovered in an *action at law*, an injunction should not be allowed.

Neither should the extraordinary powers of the court be exercised by injunction to restrain competition in trade to any extent.

The *water* in a running stream can never become the absolute *property* of a riparian proprietor, even if he owns both banks, and the stream passes wholly through his lands. All the property that a man can acquire in flowing water is a right to its *use*. He may have a certain right of property in it, but the water itself is not his property. He must allow the waters to pass out of his lands as they enter them, and his only right is, a right to use them as they flow.

Therefore, the *ice* made from the waters in a mill-pond is not the absolute property of the owner of the mill, so that he could sell or dispose of it, as he could the trees and timber, or the earth and minerals on his farm.

Where the owner of a mill, and the land on one side of the centre of the mill-pond, granted a license to an individual to take ice from that portion of the pond,

*Held*, that the grantee, on complaint that another person was infringing upon his premises by taking and carrying away ice, although he might maintain an action of *trespass*, was not entitled to an *injunction* to restrain the taking of the ice.

*Dutchess Special Term*, 1856.

MOTION on the part of the defendant to dissolve an injunction-order. The motion is made upon the complaint, answer and affidavits.

An injunction-order was, on the 27th of. February, 1856, granted by the county judge of Dutchess, " commanding and strictly enjoining the defendant and his agents, laborers and servants, and all others acting in aid or assistance of him, and each and every of them, &c., that he and they, and each of them, do absolutely desist and refrain from entering upon, and from cutting, sawing, gathering, or carrying away the ice from the pond known as the Red-Mills Pond, owned by David B.

Marshall agt. Peters.

Lent, which ice belongs to the plaintiff, until this court shall have made further order thereupon."

Upon the service of this injunction-order, the defendant obtained, from Mr. Justice Emott, one of the justices of this court, an order requiring the plaintiff to show cause why the above injunction-order should not be dismissed and vacated.

This Red-Mills pond is created by the erection of a dam across the Fall-Kill creek in the city of Poughkeepsie, owned by David B. Lent, which causes the water to overflow the lands on each side of the creek for about half a mile east of the dam. This Fall-Kill creek runs an easterly and westerly course; the farm and lands of Mr. Lent are situate on the north side of the creek, and the deeds to Mr. Lent gives his south boundary "the centre of the creek, and along down the centre of the creek as it winds and turns," &c. The owners of the lands on the south side of the creek have for their north boundaries "the centre of the said creek."

The other facts in the case are sufficiently stated in the opinion of the court.

Upon showing cause,

John Thompson & Gilbert Dean, *for plaintiff,*

Cited the following cases:—3 *Paige,* 584; 2 *Vern.* 390; *Prec. in Ch.* 530; 4 *Ves.* 428; 4 *Edwards R.* 545; *Angel on Water Courses,* 233; 7 *Bar. S. C. R.* 395; 6 *Cow. R.* 518; 1 *Paige,* 447; 13 *John. R.* 212.

Leonard Maison & J. F. Barnard, *for defendant,*

Cited 19 *Bar. S. C. R.* 371, 378; *Voorhies'* 2d ed. of Code of 1852, *pp.* 229, 230, 231, 240, §§ 219, 401, 402.

Emott, Justice. The plaintiff sets forth in the complaint in this action, that David B. Lent is the owner of the premises known as the Red Mills, in the city of Poughkeepsie, and of the right to maintain the dam upon the Fall-Kill creek at its

present height, and thereby to flood the lands now covered with the waters of the Red Mills pond. That said Lent is the owner of the lands lying along the north shore of the pond for its whole length, and that his south boundary is the centre of the channel of the creek as it ran before the pond was made. He also alleges, that Mr. Lent "has the exclusive right to the waters, frozen and liquid, on the whole of said pond," and that he has conveyed to John J. Grant all his right to such ice, with the exclusive right of entering on the pond to gather the same for five years, from October, 1853. The interest of Grant has been assigned to the present plaintiff, who is engaged in the business of storing and selling ice, and who claims, by this title, to be the owner of all the ice now on the pond, which, he says in his complaint, is of the value of more than $100 to him.

The grievance of which he complains is, that the defendant is cutting ice from the pond north of the channel, which he claims to be Lent's line, and quite up to the north shore; and alleges that such cutting and taking of ice will be a great damage to him, and asks for a perpetual injunction. On this complaint was issued an injunction, which I am now asked to dissolve.

It will be observed, that the complaint contains no allegation of any precise, or any peculiar, not to say irreparable, injury to be sustained by the plaintiff for the acts complained of. There is no allegation that the ice said to be wrongfully cut by the defendant, or that all the ice now on the pond is absolutely necessary to the plaintiff to enable him to comply with his sales and engagements, or to carry on his business. Nor is it averred that this is the only body of ice accessible to dealers in that article within the city. The claim which was made upon the argument, that Mr. Lent was the owner of all the land covered by the waters of the pond, was evidently not in the mind of the pleader who drew the complaint, and is not the theory on which it proceeds. The whole case is made to rest, then, upon the damage done, or to be done, by the defendant, by cutting and taking out ice on the north side of the channel.

The damage which the plaintiff can sustain by this—[admit-

ting him to be the purchaser and absolute owner of the ice, which the defendant is interfering with, or with his right to take it]—can only be increased in one of two ways. It is either the injury which he will sustain in his business by the introduction of a competitor, by means of the ice thus obtained, or it is the injury which is sustained by every person upon whose property and rights a trespass is committed. The latter injury in this case consisted in the cutting of the ice beyond the channel only, according to the complaint, and cannot be very serious in amount, since the whole value of all the ice claimed for the plaintiff is put at only $100. There is nothing in this aspect of the case to distinguish the alleged wrongful act of the defendant from an ordinary trespass.

No consequences are alleged beyond the abstraction of so much of the plaintiff's property, or a trespass to that extent upon his rights. The injury is not irreparable, for the ice is not absolutely necessary to the plaintiff, and, unlike minerals, or earth, the produce of mines, or the covering of land, the ice is constantly reproduced in its season by the action of the elements, as fast as it is abstracted for the use of man. I can see nothing in this case, in its broadest or most favorable aspect for the plaintiff, to distinguish it from an ordinary action of trespass—no grievance which cannot amply and readily be recompensed by damages, to be recovered in an action at law, or which requires the interposition of a court of equity. In the other aspect of the consequences to him of the acts complained of, the possible injury to his business by introducing competition, it is obvious that the plaintiff does not state any principle upon which he can invoke the aid of a court of equity.

The mandate of this court, its extraordinary powers of injunction, should never be exercised to restrain competition in trade to any extent.

But it was said that the plaintiff in this action succeeds to all the rights, and stands in the place of Mr. Lent, for all purposes of any suit respecting this pond or its waters; and that Mr. Lent is the absolute owner of the water in the pond, whether frozen or liquid; that it is his property like anything else be-

longing to him.    I am unable to agree to either of these prop-
ositions.

There is nothing in the case, in the allegations of the com-
plaint, or in the provisions of the agreement between Lent and
Grant, [which is the source of the plaintiff's rights,] connect-
ing or identifying the plaintiff with, or substituting him for Mr.
Lent, or his rights and privileges as mill-owner in or as to the
waters of this pond.

The plaintiff is not made the owner, or let into any share of
any such rights or easement of Mr. Lent.    There are a great
many rights and remedies which Mr. Lent may possess as pro-
prietor of the mill and dam, and right to flow back the stream,
which cannot accrue to the plaintiff under a sale or conveyance
of all Lent's right to take ice from the whole or any portion of
the pond, even if that right was as extended in Lent as is
claimed.

The instrument produced, I apprehend, is a mere license to
the grantee to enter upon the pond—so far as its waters cover
land of Lent—and remove the ice, so far as that, or the waters
from which it is congealed, belong to Lent.    The plaintiff here
cannot certainly be regarded as interested in the flow of this
water, or in any mill-privilege, to entitle him to bring this ac-
tion.    He is at most, on his own showing, simply the owner of
the ice, and the act of the defendant, for that reason, a trespass
upon him.

But it is quite as far from being true, that Mr. Lent is the
owner of the water in this pond, or that it, or the ice formed
from it, is his absolute property.    The water in a running
stream can never become, in any such sense as was claimed on
this argument, the property of a riparian proprietor, even if he
owns both banks, and the stream passes wholly through his
lands.    All the property that a man can acquire in flowing wa-
ter is a right to its use.    He may have a certain right of prop-
erty in it, but the water itself is not his property.    He has a
right to its natural flow, and to use it for his cattle or his house-
nold, or upon his mill-wheels.    But he cannot stop its current

Marshall agt. Peters.

nor divert its flow, nor increase or diminish it, in any appreciable quantity, nor interfere with its quantity or character.

He must allow the waters to pass out of his lands as they enter them, and his only right is a right to use them as they flow. It was said, upon the argument, that there was no proof before the court that there were any mills or mill-seats upon the Fall-Kill below this pond. That is wholly immaterial. The Fall-Kill is a running stream, and this pond has been made by artificially damming its waters; and whether this court can know that there are mills or mill-seats in any number below, or that it merely irrigates agricultural lands, the court is bound to know, as matter of public law, that the only right of any man through whose lands it passed is a mere right to its use, and its usual and uninterrupted flow. Its water, therefore, or the ice made from it, is not the absolute property of Mr. Lent, so that he could sell or dispose of either of them, as he could the trees and timber, or the earth and minerals upon his farm.

Even if the plaintiff here represented all the rights of Mr. Lent, there is not enough in the complaint to retain this injunction. There is no allegation that the removal of this ice will diminish the waters of the stream in such quantity as to interfere with the mill-privilege, or water-power claimed and enjoyed by Mr. Lent, or that it will have any appreciable effect upon his rights as a mill-owner. *De minimis non curat lex;* and while the defendant may be liable in trespass to some damages for taking ice, or water in the shape of ice, to the extent of twenty or thirty feet square, and from one to two feet in thickness, out of the pond, where it covered lands in which he had no right or license, it is clearly not a case to invoke the aid of a court of equity to restrain such an act by injunction.

In every view which I have been able to take of this case, I am satisfied that this injunction cannot be sustained. I do not consider the question which was prepared and argued with great industry and ability, as to the extent of the title of Mr. Lent, and of the proprietors south of the pond, or the ownership of the bed of the pond, of any consequence to the decision of this motion, or to the plaintiff's right to this injunction, and there-

fore I express no opinion upon it. If the plaintiff should desire to review my decision, and should be advised that it is material for him to prove the extent and location of the premises conveyed by the deeds introduced from Gilbert Livingston and Petter Tappan to Myndert Van Kleeck in 1789, from M. Van Kleeck to Henry A. Livingston in 1798, from H. A. Livingston to Gerardus Smith in 1799, and from Gerardus Smith to Joseph Harris in 1815, he may file an affidavit of a surveyor as to these points, with the papers used on this motion.

The injunction must be dissolved, with $10 costs.