# Roger S. Searle, Plff. in Err., *v.* David V. Gardner.

The owner of land flowed by a mill pond has a right to cut ice over the land, for market, provided it is not taken in such quantities as appreciably to diminish the head of water at the dam below.

(Argued March 13, 1888.  Decided April 23, 1888.)

January Term, 1887, No. 417, E. D., before GORDON, Ch. J., PAXSON, STERRETT, CLARK, and WILLIAMS, JJ.  Error to the Common Pleas of Susquehanna County to review a judgment for the defendant *non obstante veredicto* in an action of trespass on the case, April Term, 1885, No. 461.  Affirmed.

The facts as they appeared at the trial in the court below before MORROW, P. J., were stated in his opinion, delivered on entering the judgment, which was as follows:

What is now called Jones's lake, was known many years ago

NOTE.—The owner of the soil, and not the one having the right to flow the land, has title to the ice and may remove the same from the pond. Farnham, Waters, pp. 1603, 1811.  Which right is limited only by the condition that in removing it he must not remove such a quantity of the water as to interfere with the flowage rights of the other.  Id. 1811. The ownership of the ice does not prevent the mill owner from operating his mill in the usual manner, although he thereby injures or destroys the ice.  Id. 1812.  But he will be liable if he needlessly and wantonly draws down the water so as to injure the ice.  Id. 1812.

as "Wheaton's pond." It was a natural basin or reservoir, supplied by springs in it or along its borders, and formed the head water of a small stream which flows into Snake creek. The dam at the outlet was built seventy years ago, and the water stored in the pond has, during all that time, been used to run the mill which stands a little way below the dam. The pond covers 47 acres. The plaintiff's land extends about 600 feet above the dam. The rest of the land covered by the water is the property of the heirs of Post and Jessup. It was on their land, under leave from them, that the defendant cut, in the winter of 1884-5, about 700 tons of ice, and stored about 460 tons in his wife's ice house standing near the edge of the lake on land owned by her. The rest he sold to persons who hauled it away. He cut it "under a claim of right to cut, store in his ice house and sell the same as merchandise to all persons who might want to purchase it; but not, however, to such an extent as to injure the mill power of the plaintiff."

Searle's right to flow the land and use the water to run his mill is unquestioned; and it is conceded that if the defendant interfered with this right so as to perceptibly lessen the power of the mill, he made himself liable for all damages sustained by the plaintiff. The jury, however, found that the plaintiff sustained no material injury, but, by direction of the court, found for him 6 cents nominal damages and the special verdict, on which these rules for judgment were granted.

The defendant, as licensee of the owners of the soil, possessed the rights of an upper riparian owner. He could take as much water and ice from the lake as were necessary for domestic purposes. He could also use the water for irrigation and manufacturing purposes, provided he returned it to the lake uncorrupted and without such essential diminution as to materially lessen the plaintiff's mill power. But the right to take the water, in the form of ice or in its liquid state and make merchandise of it, is denied, whether the plaintiff sustained material injury or not—for the reason that it is a disturbance of the plaintiff's right through a tortious act; and if continued twenty-one years, a prescriptive right would be acquired.

It is a well-established rule of law that when there is an infringement of a right, an action will lie, although no actual damage has been sustained. Delaware & H. Canal Co. v. Torrey, 33 Pa. 143, and the cases there cited.

The reason is that wherever any act injures another's right and would be evidence in the future in favor of the wrong doer, an action may be maintained for the invasion of the right without proof of any specific injury,—as, in an action of trespass for fishing in the plaintiff's fishery (Patrick v. Greenaway, cited in 33 Pa. 149). It appeared that the defendant fished but did not take any fish. The plaintiff recovered, although it was not stated in the declaration that the defendant caught any fish.

So, too, as to diverting water from a mill site which had never been used, it was said: "A mill privilege not yet occupied is a property which no one can have a legal right to impair or destroy" (Blanchard v. Baker, 8 Me. 253, 23 Am. Dec. 504; Newhall v. Ireson, 8 Cush. 595, 54 Am. Dec. 790); "and if an unlawful invasion is suffered for twenty-one years, it ripens into a right which cannot be controverted."

This doctrine is not denied, but it is claimed it applies to cases where the right or possession is absolute and exclusive, and not where it is relative or concurrent as in this case.

As to the rights of mill owners to the ice over the land of others, I find no case in Pennsylvania directly in point, and the decisions in other states are conflicting. Myer v. Whitaker, 55 How. Pr. 376, decides that the owner of the mill has the exclusive right to gather the ice on the mill pond. But in Marshall v. Peters, 12 How. Pr. 218 and Dodge v. Berry, 26 Hun, 246, it was held that the mill owner does not own the ice on the land of others, and the latter may remove it if they do not actually and perceptibly injure the mill owner.

These are New York supreme court cases. The plaintiff relies largely on the case of Mill River Woolen Mfg. Co. v. Smith, 34 Conn. 462, where the mill owner made no proof of actual damage and failed to recover. The judgment was reversed, for the reason that water was sometimes scarce; that the ice and snow prevent deep freezing, and therefore the riparian owner could not remove the snow and ice at pleasure, for such removal might result in an actual, and not merely a constructive, injury to the mill owner.

The principle seems to be that a water course is real property. The title to the bed of the stream is in the riparian owner, and he has a right to a reasonable use of the water; and such use is just and reasonable which does no sensible injury to the owner below. Cummings v. Barrett, 10 Cush. 186; and Elliott v.

Fitchburg R. Co. 10 Cush. 191, 57 Am. Dec. 85; People's Ice Co. v. The Excelsior, 44 Mich. 229, 38 Am. Rep. 246, note, 6 N. W. 636; Gould, Waters, § 191.

It was held by the supreme court of Maine (Stevens v. Kelley, 78 Me. 445, 57 Am. Rep. 813, 6 Atl. 868) that the owner of a milldam across an unnavigable stream has a qualified interest in the water flowed, but none in the ice formed upon it. The ice is the property of the riparian owner, and he has the sole right to take it, with the single qualification that it is not to be taken in such quantities as to appreciably diminish the head of the water at the dam below.

This rule seems reasonable and we adopt it, so far as applicable to the case in hand. The rights of the parties are relative. The plaintiff, aside from his right as riparian owner, has an easement only in the water of the lake, namely, the right to flow and use it as a mill power; and in the exercise of this right, he did not deprive the upper owners of any property or rights they had in Wheaton's pond and the stream flowing through it. At most, their rights were modified, not lost—their possession was not disturbed, except by the changed condition caused by the erection of the dam. They had the right to the reasonable use of the water, and still have, and, to exercise this right, they may go upon their own land and take water and ice to the same extent as if the dam had not been built. Indeed, whether they could gather ice or not on Wheaton's pond, they may avail themselves of the improvements to their property in this respect, provided the plaintiff is not materially injured. Stevens v. Kelley, 78 Me. 445, 57 Am. Rep. 813, 6 Atl. 868. "The mill is the principal. The dam is subservient to it." It follows that the exercise of this right is lawful and not tortious, and disturbs no right or possession of the plaintiff.

Nor can it be said to be an unlawful diversion of the water, even though the ice was taken under a claim of right, stored and sold as merchandise. In Elliott v. Fitchburg R. Co. 10 Cush. 191, 57 Am. Dec. 85, an upper riparian owner allowed the railroad company to divert the water from a dam on his land to a tank along its road, for the purpose of supplying its locomotives. He cut ditches and conducted water from small water courses into the pond. The jury found that the water which flowed through these artificial channels was equal to the quantity taken by the railroad company. Held, that the lower

owner could not recover, because he sustained no actual injury.

So, too, in the case of the Pennsylvania R. Co. v. Miller, 112 Pa. 34, 3 Atl. 780. The railroad company pumped the water on its own land into large tanks, and took it in pipes a mile distant to its station at Downington, where it was used to supply its locomotives. Mr. Justice PAXSON said: "The railroad company may use the water, by virtue of its rights as riparian owner; but such use must be such as not to sensibly diminish the stream to the riparian owner below." This was a diversion of water from a dam that had been used nearly a hundred years as a paper-mill power—much like the case at bar; and seems, in connection with the other cases referred to, as decisive against the plaintiff's right to recover.

I do not think this conclusion is in conflict with Swindon Waterworks Co. v. Wilts & B. Canal Nav. Co. L. R. 7 H. L. 697, and Metropolitan Asylum Dist. v. Hill, L. R. 6 App. Cas. 193. There the waterworks company undertook to divert the entire stream.

And now, March, 1887, the rule to enter judgment in favor of the plaintiff, upon the special verdict, is discharged, and the rule for judgment for the defendant, *non obstante veredicto,* is made absolute; and judgment accordingly.

The assignments of error specified substantially the action of the court in entering this judgment.

*Wm. M. Post,* with *McCollum, Searle, & Smith,* for plaintiff in error.—We have found no case in Pennsylvania touching the question, and the decisions of other states are somewhat in conflict, owing partly to local laws.

The ice belongs to the one who rightfully ponds the water. Myer v. Whitaker, 55 How. Pr. 376.

We are entitled to have the ice and water of this pond remain in it, for the use of our mill. Mill River Woolen Mfg. Co. v. Smith, 34 Conn. 462.

Wherever it is a continuous wrongful act, and done under a claim of right, no matter how small the injury, or even if there has been no appreciable diminution in the water, and no pecuniary loss at all, an action will be supported. Goddard, Easements, Bennett's ed. 432, 356, 358; Gould, Waters, §§ 214, 405; Angell, Watercourses, § 135 and notes; Phear, Rights of Water,

§ 107; Newhall v. Ireson, 8 Cush. 595, 54 Am. Dec. 790; 1 Wait, Act. & Def. 40; Whetstone v. Bowser, 29 Pa. 59.

The reasonableness of the uses to which water may be applied depends upon the facts and circumstances of the particular case.

The distinction taken between a stream so large as to be properly designated a creek or a river, and a mere rivulet used for the purpose of irrigation, is perfectly well founded. In the one case, of course, a much larger quantity may be absorbed, without perceptible diminution or actual injury, than in the other. Miller v. Miller, 9 Pa. 74, 49 Am. Dec. 545.

While the amount abstracted from the stream in one instance for unreasonable, and therefore unauthorized, uses might be small, as in our case, yet, if allowed to one, it must be allowed to all; and the result might be, in many cases, as it would certainly be in ours, ruin to the stream as a water power. Wilts & B. Canal Nav. Co. v. Swindon Waterworks Co. L. R. 9 Ch. 451; Ormerod v. Todmorden Joint Stock Mill Co. L. R. 11 Q. B. Div. 158.

*Blakeslee & Williams* and *W. H. & H. C. Jessup,* for defendant in error.—Ice belongs to the riparian owner over whose estate it forms; and he may do as he pleases with it, provided he does not perceptibly injure any other milldam or riparian owners. Bigelow v. Shaw, 65 Mich. 341, 8 Am. St. Rep. 902, 32 N. W. 800; State v. Pottmeyer, 33 Ind. 402, 5 Am. Rep. 224; Edgerton v. Huff, 26 Ind. 36; Julien v. Woodsmall, 82 Ind. 568; Brookville & M. Hydraulic Co. v. Butler, 91 Ind. 134, 46 Am. Rep. 580; Lorman v. Benson, 8 Mich. 18, 77 Am. Dec. 435; People's Ice Co. v. The Excelsior, 44 Mich. 229, 38 Am. Rep. 246, 6 N. W. 636; Washington Ice Co. v. Shortall, 101 Ill. 46, 40 Am. Rep. 196; Brooklyn v. Smith, 104 Ill. 429, 44 Am. Rep. 90. See Stevens v. Kelley, 78 Me. 445, 57 Am. Rep. 813, 6 Atl. 868; Gould, Waters, § 191; Paine v. Woods, 108 Mass. 160-172; Dodge v. Berry, 26 Hun, 246; Marshall v. Peters, 12 How. Pr. 218; Ham v. Salem, 100 Mass. 350; Elliott v. Fitchburg R. Co. 10 Cush. 191, 57 Am. Dec. 85; and Cummings v. Barrett, 10 Cush. 186.

The gathering of ice in no manner interfering with capacity of the pond to run the mill is a right which belongs to a riparian owner. Williams v. Nelson, 23 Pick. 141, 34 Am. Dec. 45, and authorities, *supra.*

PER CURIAM:

The learned judge of the court below has so fully and satisfactorily disposed of this case, in his opinion setting forth his reasons for entering judgment for the defendant *non obstante veredicto*, that nothing is left for us to do but to concur, not only in the judgment, but also in the opinion.

Judgment affirmed.