PASQUALE VALENTINO et al., Respondents, *v.* PHILIP
SCHANTZ et al., Appellants.

Water and watercourses — respective rights of riparian propri-
etor and of owner of right of flowage.

The privilege of flowage or pondage does not carry with it the
right to take ice formed over the land of an adjoining riparian
owner. As between the owner of the soil and one having a right
to flow the land for creating a water power, the title to the ice is in
the owner and the right thereto may be exercised by him, except
so far as it operates to the detriment of the mill privilege. (*Myer*
v. *Whitaker*, 5 Abb. [N. C.] 172, overruled.)
*Valentino* v. *Schantz*, 158 App. Div. 895, affirmed.

(Argued May 12, 1915; decided September 28, 1915.)

APPEAL from a judgment of the Appellate Division of
the Supreme Court in the third judicial department,
entered July 28, 1913, modifying and affirming as modi-
fied a judgment in favor of plaintiffs entered upon a
decision of the court at a Trial Term without a jury.

The nature of the action and the facts, so far as mate-
rial, are stated in the opinion.

*Andrew Wright Lent* for appellants. The right to
flow which is granted to the defendant Philip Schantz

1

by a long series of conveyances is not in any way restricted or limited as to its purpose. Such a right gives the owner the right to cut and remove ice forming over the lands of another. (*Myer* v. *Whitaker*, 55 How. Pr. 376; *Dodge* v. *Berry*, 26 Hun, 246; *Hazleton* v. *Webster*, 20 App. Div. 177; *Swan* v. *Goff*, 39 App. Div. 95.)

*Rosario Naggio* for respondents. The privilege to raise the water cannot be construed into a grant of a right to enter that part of the pond lying within plaintiffs' boundaries, take the ice forming thereon and prevent the plaintiffs from taking any ice or water therefrom. (*Dodge* v. *Berry*, 26 Hun, 246; *Hazleton* v. *Webster*, 20 App. Div. 177; *Swan* v. *Goff*, 39 App. Div. 95; *Howe* v. *Andrews*, 62 Conn. 398.)

WILLARD BARTLETT, Ch. J. This is a suit in equity to restrain the defendants from taking ice formed on water overflowing the lands of the plaintiffs. The defendant Philip Schantz and the plaintiffs own contiguous tracts of land in the township of Lloyd in Ulster county. There is a pond upon these adjoining properties covering portions of both tracts. This pond overflows about two acres of the plaintiffs' land. The defendant Philip Schantz claims the right to take ice from this portion of the pond on the ground that the whole pond is formed by the action of a dam which he maintains under a chain of title derived from a common grantor of both parties; contending in substance that this entitles him to follow the water which the dam forces back upon the land of the plaintiffs and to take ice therefrom and to assign this privilege to others, as he has done to his codefendant Lorin Schantz, for the purpose of marketing the ice thus taken. Independent of the right asserted under the series of deeds which make up his chain of title, the defendant Philip Schantz also claims the right to take ice over the plaintiffs' land by prescription or continuous and

uninterrupted user for a period extending over twenty years.

The trial court found against the said defendant as to both claims.

The defense of adverse user raised a question of fact and the evidence sufficed to sustain the findings on that issue.

The principal question of law presented by this appeal is whether the right of flowage belonging to the owner of a dam carries with it the right to take ice from the water which the dam causes to collect over the land of an adjoining owner.

The record contains fourteen deeds constituting the chain of title of the defendant Philip Schantz. The earliest deed, dated July 10, 1815, from Andros Du Bois to Arthur Doring, conveys the mill privilege in these words: "Also the privilege of raising the water in the mill pond one and a half foot higher than it is at present." Similar language is used in succeeding conveyances until April 1, 1856, when a deed from James Doran to Moses W. Deyo conveys "about twenty acres of land with the privilege of raising the water in the mill pond as high as a horizontal cut in the rock on the west side of said pond." In this form, the privilege is vested in the defendant Philip Schantz.

The contention of the appellants is presumably based on a view of the law similar to that which we find thus stated in Gould on Waters (3d ed. § 191): "The owner of an artificial mill pond who is entitled to the water of the pond, is also entitled as against the riparian owners, to have the ice which forms thereon remain, if its removal will appreciably diminish the head of water at his dam; and a grant of the right to flow land by damming a stream has been held to give to the grantee the exclusive right to gather the ice which forms on the pond so made."

The authority cited for the latter proposition is the

Special Term case of *Myer* v. *Whitaker* (5 Abb. [N. C.] 172) in which Westbrook, J., held that the grant by the owner of land of the right to overflow his land by means of a dam on a stream below gave the grantee the exclusive right to gather there the ice which might form over such land on the waters of the pond thus made. This was contrary to the view previously taken by Emott, J., also at Special Term, in *Marshall* v. *Peters* (12 How. Pr. 218), and it was expressly rejected by the General Term of the third department in *Dodge* v. *Berry* (26 Hun, 246, 249) where Learned, P. J., writing for the court, said: "The riparian owners are not, we think, deprived of their rights as such owners by the construction of a dam below them. Their right to a just and reasonable use of the water remains if it has not been actually surrendered. If any riparian owner has land covered by the pond, we see no reason why he may not take the ice from that land, unless by so doing he causes an actual injury to the owner below by materially diminishing the use of the water to which such owner is entitled. It is plain to every one that the real trouble in such cases is not that the mill-owner will be injured by the removal of the ice, but that he desires to remove it himself and to make the profit of the sale."

The true rule is correctly stated by Mr. Farnham in his elaborate treatise on the Law of Waters and Water Rights (Vol. 2, p. 1603) where he says: "As between the owner of the soil and one having a right to flow the land for creating a water power, the title to the ice is in the former." As against the owner of the easement of flowage, the owner of the soil has the right to remove the ice which forms over his land, subject to the qualification that he must not thereby damage the mill privilege. There was no question of damaging the mill privilege in the present case, as the owner of the mill privilege was the person endeavoring to remove the ice.

A somewhat different view seems to have been enter-

tained at one time by the courts of Connecticut. Thus in *Mill River Woolen Mfg. Co.* v. *Smith* (34 Conn. 462), decided in 1867, it was held that the owners of the water of a mill pond owned the ice formed upon it, and that the riparian proprietors had no right, as owners of the soil, to remove it. The doctrine thus declared, however, must later have undergone considerable modification in that jurisdiction for in the case of *Geer* v. *Rockwell* (65 Conn. 316), decided in 1895, we find Mr. Justice BALDWIN, one of Connecticut's ablest judges, saying: " Under an ordinary flowage petition the plaintiff acquires a perpetual right to build and maintain a dam, but this does not constitute him the proprietor of the ice which may be formed upon the pond. On the contrary, such ice belongs to the proprietor of the lands overflowed, subject only to the right of the mill owner to have it left to melt where it is, if this be necessary to maintain a proper supply of water for his mill."

But whatever may be the Connecticut doctrine, the rule generally recognized elsewhere is that the privilege of flowage or pondage does not carry with it the right to take ice formed over the land of an adjoining riparian owner; that right may be exercised by the latter except so far as it may operate to the detriment of the mill privilege.

Such is the law as established in Maine, Pennsylvania, Illinois, Indiana, Michigan, Wisconsin and Nebraska.

A riparian owner above a mill dam has the fixed and well-defined right to take ice from the stream where it flows over his land. The owners of the mill dam cannot avail themselves of such right, notwithstanding the fact that their action may be said to have rendered its exercise possible. " It is not a purpose recognized by law for which a person's land can be appropriated by another, but it is a privilege attached to and becomes a part of the property " of the upper riparian owner. (*Stevens* v. *Kelley*, 78 Maine, 445, 450.) The rule laid down in this

Maine case was expressly adopted by the Supreme Court of Pennsylvania in *Searle* v. *Gardner* (13 Atl. Rep. 835). That ice forming upon water belongs to the owner of the soil beneath the water is declared to be the general rule by the Supreme Court of Illinois in *Washington Ice Co.* v. *Shortall* (101 Ill. 46). Where the dividing line between two adjacent landowners runs through an artificial pond raised by a dam across a natural stream, the ice formed upon such stream belongs to the owner of the land forming its bed. (*State* v. *Pottmeyer*, 33 Ind. 402.) "The right to maintain a mill dam and exercise the privileges belonging thereto does not confer the right to take ice formed thereon." (*Julian* v. *Woodsmall*, 81 Ind. 568.) In *Bigelow* v. *Shaw* (65 Mich. 341) it is said: "The owner of the soil under the water is ordinarily the sole and exclusive owner of the ice forming upon such water * * * and in all the reported cases that I can find, except two, it is expressly held in a case like the one at bar, that the landowner has the exclusive right to the ice and to gather and sell it for his own benefit, provided he does not thereby impair to a perceptible and substantial extent the flow of water for mill purposes, and that the mill owner has no right whatever to such ice. This right grows out of the title to the bed of the stream and such use of the water as results therefrom." It is settled in Wisconsin that the title to the bed of a stream is in the riparian owners whether the stream be navigable or not. "Ice which forms on streams or ponds, the bed of which is subject to private ownership, belongs to the owner of such bed and such owner may maintain trespass for its removal." (*Reysen* v. *Roate*, 92 Wis. 543.) In *Eidemiller Ice Co.* v. *Guthrie* (42 Neb. 238) the Supreme Court of Nebraska has said: "Both reason and precedent support the doctrine that the riparian owner has the right to use all the water which it is necessary for him to employ for any purpose, and to cut and remove the ice which may form upon the stream adjoining his land, in

any quantity or to any extent, for his own use or to store for sale, provided he does not by so doing, diminish or decrease the flow of water to the mill below what is required to successfully operate or run the mill."

There is a class of ice cases in which it is held that one who does not hold title to the bed of a pond may nevertheless acquire by prescription the right to take ice therefrom as a *profit a prendre* or easement appurtenant to the land. Such a case was *Hinckel* v. *Stevens* (165 N. Y. 171). The existence of any such prescriptive right in favor of the owner of the mill dam in the present case is negatived by the findings of the trial court, as already pointed out.

The judgment should be affirmed, with costs.

WERNER, CHASE, CUDDEBACK, HOGAN and SEABURY, JJ., concur.

Judgment affirmed.