EIDEMILLER ICE CO., APPELLEE, v. DAVID GUTHRIE ET AL., APPELLANTS.

FILED OCTOBER 16, 1894. No. 5552.

1. **Water and Water-Courses:** ICE ON MILL-DAM: RIGHTS OF OWNER OF MILL: RIPARIAN PROPRIETORS. The owner of a mill who has the right to maintain a pond or flow back the water of a stream upon the land of another and to use such water to operate his mill possesses, as to the water, the dominant right, and while not the absolute owner of ice which may form on the pond, is entitled to have it remain there during the time and when its so remaining will be, or is, useful and necessary to

the legitimate exercise of his right to use the water as motive power for the mill or to successfully operate the mill, but the owner of the land, if upon a non-navigable stream, may make any use he desires of ice which forms over and above so much of the bed of the stream to which his ownership extends as does not interfere with, or injure, the rights of the mill owner.

2. ———: DESTRUCTION OF ICE BY OWNER OF MILL-DAM: LIA-BILITY TO RIPARIAN PROPRIETOR FOR DAMAGES.  If the owner of a mill and the dam subservient thereto wantonly and unnecessarily draws the water from, or lowers the water, in the pond, and by so doing injures or destroys the ice privileges of the owner of land bordering upon the pond, he thereby renders himself liable in damages to such owner.·

3. Injunction.  An injunction will not be granted or sustained where the injury complained of in the petition filed is not shown to be such as is irreparable, or the party complainant without a full and adequate remedy at law.

4. ———: IRREPARABLE INJURIES.  An injury may be said to be irreparable when it is of such a character or nature that the party injured cannot be adequately compensated therefor in damages, or when the damages which may result therefrom cannot be measured by any certain pecuniary standard ( *Wilson v. City of Mineral Point*, 39 Wis., 164); and we will add if such as may be atoned for in damages, if in the particular case it is shown that the party who must respond is insolvent, and for that reason incapable of responding in damages, the injury is irreparable.

APPEAL from the district court of Nuckolls county. Heard below before HASTINGS, J.

The facts appear in the opinion.

*W. F. Buck* and *H. W. Short,* for appellants:

Injunction will not be granted unless the applicant has a clear and well-established right to the remedy. (*Snowden v. Noah,* 14 Am. Dec. [N. Y.], 547; *Hinchman v. Patterson Horse R. Co.,* 86 Am. Dec. [N. J.], 252; *Rhodes v. Dunbar,* 98 Am. Dec. [Pa.], 221; *Roath v. Driscoll,* 52 Am. Dec. [Conn.], 352; *Sheldon v. Rockwell,* 76 Am. Dec. [Wis.], 265; 7 Lawson, Rights, Remedies & Practice, p. 5769.)

The remedy of injunction will not be granted where the plaintiff has an adequate remedy at law. (*Tigard v. Moffitt*, 13 Neb., 565; *Schurmeier v. St. Paul & P. R. Co.*, 83 Am. Dec. [Minn.], 770; *Goodrich v. Moore*, 72 Am. Dec. [Minn.], 74; *Richard's Appeal*, 98 Am. Dec. [Pa.], 202; *Peterson v. Orr*, 58 Am. Dec. [Ga.], 484; 1 High, Injunctions, secs. 8, 13, 28; *Torry v. Camden & A. R. Co.*, 18 N. J. Eq., 293; *Swift v. Jenks*, 19 Fed. Rep., 641; 10 Am. & Eng. Ency. Law, 783.)

Injunction will not be granted unless the applicant shows undisputed special interest in, or ownership of, the property. (1 High, Injunctions, sec. 9; *State v. McGlynn*, 20 Cal., 233; *Crowell v. Horacek*, 12 Neb., 622.)

Injunction will not be granted except where the legal right is well established. A legal right will not be established and settled in an equitable proceeding. (1 High, Injunctions, sec. 8; *Cummings v. Barrett*, 10 Cush. [Mass.], 186; 9 Am. & Eng. Ency. Law, 859; 10 Am. & Eng. Ency. Law, 789, note 2.)

*J. W. Green* and *Searle & Coleman*, *contra*, contending that the destruction of plaintiff's ice would be an irreparable injury which equity should restrain by injunction, cited: *Gilbert v. Arnold*, 30 Md., 29; *Gause v. Perkins*, 3 Jones Eq. [N. Car.], 179; *Wilson v. City of Mineral Point*, 39 Wis., 160; *Commonwealth v. Pittsburg & C. R. Co.*, 24 Pa. St., 160; *Mitchel v. Dors*, 6 Ves. [Eng.], 147; *Merced Mining Co. v. Fremont*, 7 Cal., 317; *McLaughlin, v. Kelley*, 22 Cal., 212; *United States v. Gear*, 3 How. [U. S.], 121; *West Point Iron Co. v. Reymert*, 45 N. Y., 703; *Thomas v. Oakley*, 18 Ves. [Eng.], 184; *More v. Massini*, 32 Cal., 590; *Boggs v. Merced Mining Co.*, 14 Cal., 379; *Belknap v. Belknap*, 2 Johns. Ch. [N. Y.], 463; *Davis v. Reed*, 14 Md., 152; *White v. Flannigain*, 54 Am. Dec. [Md.], 668; *Dudley v. Hurst*, 1 Am. St. Rep. [Md.], 368; *Holsman v. Boiling Spring Bleaching Co.*, 14 N. J. Eq.,

335; *Erhardt v. Boaro*, 113 U. S., 537; *Mayor of City of Frederick v. Groshon*, 96 Am. Dec. [Md.], 591; *Webber v. Gage*, 39 N. H., 182; *Reddall v. Bryan*, 74 Am. Dec. [Md.], 550; 1 Joyce, Doctrines & Principles of Injunction, 218; *Piscataqua Bridge v. New Hampshire Bridge*, 7 N. H., 35; *Milhan v. Sharp*, 27 N. Y., 611; *Burnley v. Cook*, 65 Am. Dec. [Tex.], 79; *Manhattan Mfg. Co. v. New Jersey Stock Yard & Market Co.*, 23 N. J. Eq., 161.

The ice belonged to the plaintiff. (*Bigelow v. Shaw*, 8 Am. St. Rep. [Mich.], 902; *Washington Ice Co. v. Shortall*, 101 Ill., 46; *State v. Pottmeyer*, 30 Ind., 287; *Lorman v. Benson*, 8 Mich., 18; *Mill River Mfg. Co. v. Smith*, 34 Conn., 462; *Paine v. Woods*, 108 Mass., 173.)

The grievances complained of were trespasses upon the property rights of plaintiff of which it has a right to complain. (*Stevens v. Kelley*, 78 Me., 445; *Woodman v. Pitman*, 79 Me., 456; *People's Ice Co. v. Steamer Excelsior*, 44 Mich., 229.)

HARRISON, J.

March 9, 1891, the appellee herein, the Eidemiller Ice Company (hereinafter referred to as the "company"), instituted an action against Robert and David Guthrie, partners under the firm name and style of Guthrie Bros., and in order that a full understanding of the issues may be had, we think it best to copy the petition and answer. The original petition was demurred to and an amended one filed, which was as follows:

"Comes now the Eidemiller Ice Company, a corporation duly incorporated and doing business as such, and complaining of Robert Guthrie and David Guthrie, partners doing business under the firm name and style of Guthrie Bros., defendants, says:

"1. That said plaintiff is duly incorporated under the laws of the state of Kansas, and doing business as such in

the states of Kansas and Nebraska, and as such authorized to sue and be sued.

"2. The said plaintiff is the owner of lots numbered 3 and 4 in section No. 27, in township No. 1 north, range No. 7 west of the 6th P. M., in Nuckolls county, Nebraska, according to the United States survey thereof, and containing about forty acres of land.

"3. That defendants are the owners of a mill-dam located on the Republican river, at about the distance of one thousand feet to the south of plaintiff's said premises, which has remained in the same condition as it now is for several years last past, which said dam backs the water up and upon plaintiff's premises, but confines the waters thereof during the greater portion of the year to the river bed of said Republican river, which is about two hundred feet in width at the point where it courses along and through plaintiff's said premises.

"4. That upon and along the south and west line of plaintiff's said land and premises courses the said Republican river, which river is, and for a long time past has been, permanently dammed by said defendants as aforesaid, making the water in the bed of the river, where it courses along and through plaintiff's said premises, at an average depth of about five feet, at its usual stage and condition, while the mill of defendants is being operated, and said mill-dam used and kept in its usual condition for milling purposes and use, on which said river bed is annually frozen a large amount of ice, of great value to plaintiff.

"5. That plaintiff purchased said premises described in the second paragraph of this petition, for the purpose of erecting thereon ice storage houses, and for the purpose of harvesting and storing the ice so frozen on said river bed, where it courses on, upon, and along plaintiff's said premises, and that plaintiff has expended large sums of money in constructing ice storage houses on their said premises, to-wit, the sum of about $3,000, and that

plaintiff, in and about its said business of cutting and
storing ice on said premises, have expended other and
divers large sums of money, and that in the conducting
of plaintiff's business plaintiff has now outstanding large
and valuable contracts for the delivery of ice, by it to be
cut and stored on said premises, and that plaintiff so
constructed its said storage houses and embarked in said
business with the full knowledge of defendants, and with-
out any objection on their part, and that plaintiff now has
its said storage houses about half filled, and plaintiff's said
contract for future delivery of ice cannot be filled and kept
on its part unless it is able to fill its storage house with ice,.
and its said storage and other improvements and expendi-
tures will be of no use or value to plaintiff unless it is al-
lowed to fill the same, all of which is necessary to be done.

"6. That on or about the 9th day of March, A. D.
1891, ice had formed on the surface of said river adjacent
and opposite to the premises, hereinbefore described as be-
longing to plaintiff, to a great thickness, to-wit, about
twelve inches, which said ice was merchantable and of great
value, and that said plaintiff had, by its servants and
agents, taken possession of and appropriated said ice adja-
cent to and opposite to said premises, by surveying and
marking the same off into squares and blocks, and had de-
fined its said possession of said ice adjacent and opposite
to said premises by marking and staking the same off into
squares and blocks; and said plaintiff was then and there,
by its servants and agents, engaged in cutting and remov-
ing said ice and storing said ice for preservation in its said
storage houses.

"7. That on the 9th day of March, A. D. 1891, said
defendants, in person, and by and through their orders and
direction to their employes, did open the flood gates and
spill-ways of their said dam across said river for the sole
and only purpose of drawing off the water from underneath
the ice upon and along plaintiff's said premises, which

plaintiff was then and there cutting and harvesting and storing as aforesaid, and that defendants might by so doing prevent plaintiff from so cutting and storing said ice, and that said defendants are preparing to, and threaten to, open still other flood-gates and spill-ways for those purposes and none other.

"8. Said plaintiff says that if said defendants persist in so opening said flood gates and spill-ways, and drawing off said water, it will render it impossible for plaintiff to cut and harvest said crop of ice, for the reasons, among others, that it will allow said ice to rest upon the mud and slimy bottom of said body of water and river bed, covering the ice with mud and impurities and cause it to crack and break into irregular pieces, and to honeycomb and float away when the water shall again rise thereunder, thus rendering it valueless, and impossible for plaintiff to cut and harvest and preserve the same fit for use.

"9. That all of said acts of defendants in opening said flood gates and spill-ways, and in drawing off said water, were done, and are threatened to be done, without the consent of plaintiff.

"10. That the injuries so caused to plaintiff and its said land and improvements and its use and occupation thereof, and to plaintiff's said business, are continuing injuries; that plaintiff's improvements and storage house aforesaid are permanent and calculated for and adapted to use as aforesaid from year to year, and if defendants shall continue to so draw off said water and open said flood gates and spill-ways, plaintiff's premises and improvements will be rendered unfit for use, and the ice so by plaintiff taken possession of, marked off into squares, staked off, and taken possession of by plaintiff as aforesaid opposite to and adjacent to their said premises will be destroyed, and that, from the nature of the injury, damages cannot be computed in money, and the plaintiff has no adequate remedy at law.

"The plaintiff therefore prays for a temporary order of

injunction restraining the defendants, and each of them, from opening said flood gates and spill-ways, and from drawing off the water from under said ice, either by themselves in person, or by their agents and employes, until the final hearing of the case; and that upon such final hearing said temporary order of injunction may be made perpetual, and that the plaintiff recover from the defendants the sum of $5,000, its damages in the premises, and for such other and further relief as is just and equitable."

To this the appellants filed their answer, and at a subsequent date filed an amended answer, as follows:

"Comes now the defendants, and for their answer to the plaintiff's petition in this case say:

"1. That said petition does not state sufficient facts to constitute a cause of action in this case in favor of said plaintiff and against defendants.

"2. That the pretended plaintiff has no right to prosecute its alleged action in this court, for the reason that at the commencement of this action said plaintiff had no legal capacity to sue and be sued in this state; that said plaintiff was, at the time of the commencement of said cause of action, a non-resident corporation, and had not become a domestic corporation under the laws of this state.

"3. That defendants admit that they are the owners of the mill-dam located on the Republican river, and that said dam is located about one thousand feet south of lots numbered 3 and 4, in section 27, township 1 north, of range 7 west of the 6th P. M., Nuckolls county, Nebraska, which dam has been constructed for many years, and has remained in the same condition that it now is for several years last past, except certain improvements thereto made some time prior to the commencement of this action. They admit that said dam caused the water at that point in the Republican river to rise a certain distance higher and above the ordinary height of the water in the bed and channel of said river, and when the sluice gates constructed

in said dam, and as a part of said dam, are closed that said dam causes the water at that place, and for some distance above said dam, to rise a certain distance higher than the usual depth of water in the bed and channel of said river at that place. They admit that the waters so backed up by defendant's dam are confined and remain within the natural banks of said river at that place, but the defendants expressly deny that said dam backs the water up or upon the land alleged and described in plaintiff's petition as belonging to said plaintiff, and further expressly deny that the course of said river or that its channel or bed passes through or over the said land as claimed by the plaintiff.

"4. Defendants further admit that usually there is a large amount of ice frozen annually at that place on said river, but deny that the plaintiff in the case has any special right or interest or ownership to or in said ice.

"5. The defendants deny that the plaintiff is the owner of lots numbered 3 and 4, in section 27, township 1 north, range 7 west of 6th P. M., Nuckolls county, as described in second paragraph of plaintiff's petition, and allege that whatever interest or rights said plaintiff has to or in said land, if any were acquired, are held, owned, and controlled, if at all, by said plaintiff subsequent to and subject to the rights of these defendants, all of which said plaintiff well knew at the time of its alleged purchase or acquirement of interest, if any it has, in the said lots 3 and 4, in section 27, above referred to, and that if said plaintiff has expended any money in the way of buildings or improvements on said alleged acquired lots it has done so with the full knowledge of the facts that these defendants had erected a permanent mill-dam across said Republican, as hereinbefore described, and that said defendants had vested rights in said mill-dam and the back waters of said river above said dam, and the right to raise the water in said river above the natural depth of the water in the channel and bed of said

river and to back the water of said river for a certain distance above the said dam, upon lots numbered 3 and 4, in section 27, as described in plaintiff's petition.

"6. These defendants further answering deny that on March 9, 1891, or at any other time, they opened their flood gates or spill-ways in their said dam across the Republican river for the purpose of injury to the ice on said river, or for the purpose of injury to plaintiff's alleged rights in said ice for its purpose of injury to the plaintiff's business interests and contracts, or to injure the plaintiff in any way, and affirm that they have not used said dam, or their rights, water power, and water privileges in connection with said dam, at any time except when necessary for the operation of their vested rights in said dam and mill-race, and the necessary and successful operation of the mill, and for no other purpose.

"7. Defendants further answering say that they have been in open and notorious possession of and enjoyed the exclusive right to the privileges, the mill-dam, flood gates, sluice gates, spill-ways, and mill-race at and across the Republican river, located at the point hereinbefore described, for about fifteen years last past, during all of which time they operated said mill with all the privileges and appurtenances thereto, including said mill-dam, flood gates, sluice gates, spill-ways, and mill-race, and that the right of the exclusive control and use of said dam, water power, flood gates, sluice gates, spill-ways, and mill-race are necessary for the successful operation of their mill, located on said Republican river.

"8. That these defendants own and operate a flouring mill by use of its water power and water privileges derived from the construction and maintenance of their aforesaid mill-dam; that they have invested in said mill, mill-dam, mill-race, and the other necessary appurtenances for the construction, maintenance, and operation of their aforesaid flouring mill a large amount of money, to-wit, a sum not

less than $20,000, and that the exclusive control and use of said mill-dam and its appurtenances and the water privileges heretofore had by these defendants are necessary to the protection of defendants' interests and investment hereinbefore described, and without which they would be subject to great inconvenience and injury.

"9. The defendants further alleged that more than ten years ago they obtained from the then owners of said lots 3 and 4, in section 27, township 1 north, range 7 west of 6th P. M., Nuckolls county, Nebraska, the water privileges along said lots 3 and 4, and over and across the Republican river adjacent thereto, with all the rights and title of said owners thereof, and that they have been in continuous, open, and notorious possession and use thereof to the present time in and by virtue of a deed thereto, which instrument is of record with the county clerk of Nuckolls county, Nebraska.

"10. That these defendants have vested rights and both legal and equitable title to said water privileges and to said mill power and mill-dam and the lots adjacent thereto, and have maintained their said mill and mill-dam and the appurtenances thereto at a great cost and outlay of money, all of which will be rendered valueless to these defendants and to the public as a mill if the order of injunction prayed for by the plaintiff be made perpetual, and will be a total loss to these defendants.

"11. These defendants say they have been damaged by the issuance of the temporary order of injunction granted by the county court of Nuckolls county in this case in the sum of $1,000.

"12. The defendants deny each count and each and every allegation in the several counts in plaintiff's petition not herein expressly admitted. Defendants further answering say that they are worth $25,000 over and above all exemptions and liabilities, which property is in Nuckolls county, Nebraska, and within the jurisdiction of this court.

"Defendants therefore pray that said injunction may be dissolved and a perpetual injunction be denied to the plaintiff, and that it go hence without day and that the plaintiff takes nothing by its writ, and for judgment against the plaintiff for $1,000, costs, and such other relief as equity may suggest."

The reply filed by the company was a general denial of all new matter contained in the answer. A motion was filed by appellants to vacate the injunction, and after some preliminary proceedings the case was tried by the court, the following journal entry showing fully the findings of the court and the disposition made of the cause.

"Now on this 23d day of March, 1892, this cause came on to be heard upon the motion of the defendantsto vacate and set aside the injunction heretofore granted in this case and was submitted to the court, on consideration whereof said motion of the defendants is hereby overruled, to which ruling of the court the defendants except; whereupon the plaintiff, in open court, dismissed as to any claim for damages in this action, without prejudice; and now on this 24th day of March this cause came on to be heard upon the petition, answer, and reply, and the evidence, and was submitted to the court, on consideration whereof the court finds (1) that said plaintiff is duly incorporated under the laws of the state of Kansas, and that articles of their incorporation, together with the resolution of its board of directors, by them adopted, accepting the provisions of an act relating to foreign corporations and enabling them to become domestic corporations of this state, is now on file in the office of the secretary of state of Nebraska, and doing business in the states of Kansas and Nebraska; (2) that said plaintiff is the owner of, and in possession of, lots numbered 3 and 4, in section 27, in township No. 1 north, range No. 7 west of the sixth P. M., in Nuckolls county, Nebraska, according to the United States survey thereof; (3) that the Republican river courses along and through

said premises, and that said river on the 9th day of March, A. D. 1891, was frozen over with good, clear, merchantable ice to the thickness of eight to nine iches, which said plaintiff was then and there engaged in cutting and harvesting and storing in ice storage houses which plaintiff had on and before said date erected on its said premises on the bank of said river, and that said ice storage houses were of a permanent nature and of the value of about $3,000; (4) that said defendants are copartners, and are the owners of a mill-dam located on and across said river, about one thousand feet below the premises of said plaintiff, which said dam causes the waters of said river to stand at an average depth of five feet, where it courses along and through plaintiff's said premises, while the mill owned and operated by the defendants is being operated by the use of said dam and the water flowing therefrom, the flood and sluice gates in said dam are kept closed; that said mill-dam is about two hundred feet in length and at its eastern end it is provided with four flood or sluice gates, each of these gates being about six feet in width, and extending downwards two feet below the bed of said river when said sluice gates are closed; (5) that on the 9th day of March, A. D. 1891, while the plaintiff was engaged, by and through its agents and employes, in harvesting, cutting and storing said ice, so formed on said river, where it coursed along and through plaintiff's said premises, the said defendants raised said flood and sluice gates in their said dam, and then and there and thereby drew the water from underneath the ice belonging to said plaintiff and caused said ice to drop into the bed of said river, thereby cracking and injuring said ice, and forcing plaintiff to stop its work; that on the evening of said day said defendants closed their said gate, whereupon said water and ice in said river rose to their natural and usual position; that on the 10th day of March, A. D. 1891, there was served upon defendants a temporary order of injunction,

issued out of this court, in this case, enjoining the defendants from opening the said flood or sluice gates in their said dam, and from drawing off the water from underneath the ice belonging to said plaintiff; that on the morning of the 10th of March, 1891, the plaintiff, with about seventy employes and six teams, resumed the work of cutting, harvesting, and storing of said ice on their said premises, whereupon the defendants, at about 8 o'clock on said morning of said day, again raised the said flood or sluice gates of their said dam, again thereby drawing the water from under the ice of said plaintiff, causing it again to drop into the bed of said stream, rendering it impossible for plaintiff to proceed with the harvesting and storing of said ice and thus forcing plaintiff and its employes to quit the work; that at about 11 o'clock of that day defendants again closed said flood gates, sometimes called 'sluice gates,' and that thereupon the water and ice in the bed of said river again resumed its usual and ordinary position; that thereupon, at about 1 o'clock in the afternoon of said 10th day of March, 1891, said plaintiff again resumed the cutting and storing of said ice on their said premises, and that immediately upon said plaintiff's resuming its said work said defendants again raised said flood or sluice gates in their said dam, and again drew the water from under plaintiff's ice, again letting it into the bed of said stream, causing the water to flow over it and cover it with sand and impurities and ruined a portion of plaintiff's said ice, and that on the night of the 11th of March said gates were again closed and the water and ice in said river again resumed their relative position; that about 7 o'clock on the morning of the 12th of March, 1891, the plaintiff again resumed said work of harvesting and storing said ice; and that thereafter, in the morning of the said 12th of March, defendants again opened said gates in said dam, and thereby drew off the water from underneath said ice, and that the repeated dropping of said ice upon the bed of said river

destroyed said ice and rendered it wholly unfit for storage and unfit for use, and entirely valueless, thereby rendering it impossible for plaintiff to fill its said ice house to exceed one-third of its capacity; (6) that the opening of said gates in said dam by said defendants on said dates was not necessary to the proper operation of defendant's mill, nor were they so opened for the purpose of operating the same, but the court finds that the defendants opened the same for the purpose of destroying plaintiff's ice, and preventing plaintiff from harvesting the same; (7) that in the conducting of the milling business by said defendants they have never before March, 1891, found it necessary to open said gates while the ice was formed on the waters confined by said dam, and fit to be harvested and stored, and that it was not necessary for the conducting of defendants' business in March, 1891, to open said gates; (8) that plaintiff's harvesting and storing of said ice did not diminish the volume of water flowing to plaintiff's mill, but that when said gates were closed there was flowing over the top of said mill-dam a sheet of water across the whole length of said dam from six to eight inches in depth. (9) the court finds generally upon the issues joined in favor of the plaintiff.

"It is therefore considered, ordered, and adjudged by the court that the defendants be, and they hereby are, perpetually enjoined from opening the flood gates or sluice gates of their said mill-dam while ice suitable for cutting is forming on the back water confined by said dam, and while the ice formed thereon remains suitable for cutting and harvesting, and the defendants are perpetually enjoined from drawing off the water of said dam through the flood gates or sluice gates of their said dam while the ice which may hereafter be formed thereon remains suitable for harvesting and storing. It is further ordered, considered, and adjudged by the court that the injunction heretofore granted in this case also be and remain in full force as it now stands. It is further considered and adjudged by

Eidemiller Ice Co. v. Guthrie.

the court that the plaintiff recover from the defendants its costs in this action, taxed at $——."

From this decree the Guthrie Bros. have perfected an appeal to this court. It is contended by counsel for appellants that by reason of their ownership of the mill and the dam which flowed or held back the water and created the pond, a portion of which, by the action of the frost, had congealed and formed the ice which the company was cutting and storing, they were the owners of and entitled to the ice, claiming the right by virtue of a transfer made September 27, 1887, from the then owner of the land to appellants, and the length of time they had maintained the dam in the river and exercised the right which they assert authorized them to flow the land or to back water over it, in such manner and quantity as was necessary to maintain the dam and operate their mill. There is, or probably it may more correctly be stated there was, some contrariety of opinion as expressed in the decisions of the courts in reference to which is the owner of ice upon a mill pond,—the party who erected the dam and owns the right to the water and to flow or hold it back, or the party holding the legal title to the land, the riparian owner; but where the stream is of the character of the one which figures in this case, that is, not navigable, we are satisfied both reason and precedent support the doctrine that the riparian owner has the right to use all the water which it is necessary for him to employ for any purpose and to cut and remove the ice which may form upon the stream adjoining his land, in any quantity or to any extent, for his own use, or to store for sale, provided he does not, by so doing, diminish or decrease the flow of water to the mill, below what is required to successfully operate or run the mill. (Gould, Waters, sec. 191, and cases cited; *Stevens v. Kelley*, 3 New Eng. Rep. [Me.], 230; *Brookville & Metamora Hydraulic Co. v. Butler*, 91 Ind., 134, and cases cited; *Washington Ice Co. v. Shortall*, 101 Ill., 46.) "The ripa-

rian owner and the person who flows have each a qualified right in the ice which forms in an artificial pond; *i. e.*, the mill owner has the right to have the ice remain if its removal will appreciably diminish the head of water at his dam; and the riparian owner the right to cut and remove the ice if its removal will not appreciably diminish such head." (*Bigelow v. Shaw*, 65 Mich., 341; *Paine v. Woods*, 108 Mass., 172; *Searle v. Gardner*, 12 Cent. Rep. [Pa.], 420; *Cummings v. Barrett*, 10 Cush. [Mass.], 186; *Marsh v. McNider*, 55 N. W. Rep. [Ia.], 469; *Howe v. Andrews*, 62 Conn., 398.) The rights of a mill owner in the water of the stream upon which his mill is situated and in which he has constructed a dam, and to the full and necessary supply of water, have been recognized in this court. (*Culver v. Garbe*, 27 Neb., 312.)

It is further argued that the injunction granted in this case is too indefinite and uncertain, and if fully complied with by appellants in its full scope, it will render the mill privileges valueless to quite a large and appreciable extent. The evidence tended to or did establish that the head of the race by which the water was conducted to the mill from the reservoir or pond at times became clogged or partially filled with sand or broken ice or other matter which obstructed the free and full flow of the water, and when this was sufficient to become apparent at the mill by the lack of water sufficient in the race to furnish power when applied to the machinery to run the mill to its fullest capacity, the gates were raised, the spill-ways opened, and by thus allowing the water to escape at the dam, a current was formed at the head of the race some distance above sufficient to sluice it or remove the sand or other obstructions. Appellants claimed that this was the least expensive and most efficacious manner in which the object sought could be accomplished, and that they did it and had so done during about fifteen years they had been operating this mill. If so, this was one of the necessary and reasonable uses of the

water confined by their dam, connected with the most suc-
cessful and economical running of the mill, and one which
they would have a right to exercise at any time when the
conditions were such that without so doing the full and
complete operation of the mill would be retarded.    If it
is true that the above was the cheapest and most efficacious
manner in which this sluicing or cleaning ·the head of the
race could be done, and was requisite to a successful oper-
ation of the mill, then they had a right to resort to it when-
ever it was needed.    At the time the injunction in this case
was first granted, the company had been cutting ice on the
mill pond for about thirty days, when the appellants raised
the gates in the dam and allowed the water to escape and
ruined the remaining ice which the company purposed
storing, and to which, if they were the owners of the land
and bed of the stream, they were entitled, if its harvesting
did not appreciably diminish the flow of the water to ap-
pellants' mill necessary for its operation.    The petition
filed by the company to procure an injunction was directed
to the immediate threatened act or acts of the appellants
and the effect produced or which would ensue to the ice
then upon the pond, and not to any future or other crops
of ice.    The evidence was similarly directed or limited in
its application, and the court confined its findings to the
particular instances complained of in the petition and in
issue in this case; but the order of injunction is much
more extended and broader in its scope where it states,
"That the defendants be, and they hereby are, perpetually
enjoined from opening the flood gates or sluice gates of
their said mill-dam while ice suitable for cutting is form-
ing on the back water confined by said dam, and while the
ice formed thereon remains suitable for cutting and har-
vesting, and the defendants are perpetually enjoined from
drawing off the water of said dam through the flood gates
or sluice gates of their said dam while the ice which may
hereafter be formed thereon remains suitable for harvest-

ing and storing. It is further ordered, considered, and adjudged by the court that the injunction heretofore granted in this case also be and remain in full force as it now stands." The injunction was, we think, extended far beyond what was contemplated or warranted by either the pleadings, evidence, or findings of the court, which findings were fairly sustained by the testimony, and would at least require to be modified if continued in force. It is true the court reached the conclusion that at this particular time it was unnecessary for the appellants to raise the gates and thus lower the water in the dam; but we do not consider this a sufficient finding, even when coupled with the further one that it had never before been necessary to raise the gates at the same season of the year, upon which to base such an injunction as was made perpetual in this case, restraining and preventing an act which it was clearly shown was a necessity to the appellants in the conduct of their milling business. We further think the order is open to the objection that it is uncertain and indefinite, covering as it does and prohibiting the performance of the act complained of during several weeks and possibly during several months of each year, the time when, and its continuance to be governed by the formation of ice on the stream and its fitness for cutting and storing and the commencement and continuance of these conditions.

It is further argued by counsel for appellants that the company was not entitled to an injunction, as they had, if injured, a full and adequate remedy at law, in an action for damages. Counsel for the company combat this with the argument that the relief afforded in a suit for damages, if any, could not be made full and adequate from the very nature of the injury, involving elements of damage which could not be recovered in an action and which make up a case so peculiarly constituted as to call for the aid of a court of equity and the exercise of its controlling powers by injunction. We have no doubt that where the owner

of a mill-dam, either maliciously or unnecessarily, draws the water from the pond, or materially lowers it, and by so doing destroys the ice privilege, he becomes liable to an action for so doing. (*Stevens v. Kelley*, 3 New Eng. Rep. [Me.], 230.) In this case, quoting from *Phillips v. Sherman*, 64 Me., 174, it is said: " 'A wanton or vexatious or unnecessary detention would render the mill owner so detaining, liable in damages to those injured by such unlawful detention;' " and the court adds: "If the owner of the dam has no right unreasonably to detain the water, for the same reason he would have no right wantonly to accelerate it, to the injury of owners above or below." It is true, we presume, that the appellants might abandon their mill and tear out the dam if they so desired, and thus restore the river to its original condition, and destroy the ice privilege, and do so with impunity and no one be heard to complain; but this is not their case. They are still operating the mill and still maintain the dam, and desire so to do, and the case must be considered and determined from a view of the conditions and relations of the various parties and properties as they existed, and not what the rights might have been under other conditions or relations. If the water was wantonly or unnecessarily drawn out of the pond and the ice which belonged to appellants thereby broken, injured, or destroyed, the parties who did it became liable in damages to the owners. (*Stevens v. Kelly, supra; Richards v. Gauffret,* 14 N. E. Rep. [Mass.], 535; *Handforth v. Maynard,* 28 N. E. Rep. [Mass.], 348; *Lorman v. Benson,* 8 Mich., 18; 30 Central L. J., 6.) If the action for damages will afford adequate relief, compensation in full for the injury inflicted, it will suffice, and an action for injunction will not be entertained. It is a well settled general rule that the remedy by injunction will not be granted unless the plaintiff is about to suffer an irreparable injury, or one for which there is not an adequate remedy at law. (*Tigard v. Moffitt,* 13 Neb., 565; 1 High, Injunctions, p. 28.) An irreparable

injury, within the meaning of the law of injunctions, has been defined by Pearson, J., in *Gause v. Perkins*, 3 Jones Eq. [N. Car.], 177, as follows: "The injury must be of a peculiar nature, so that compensation in money cannot atone for it. Where, from its nature, it may be thus atoned for, if, in the particular case, the party be insolvent, and on that account unable to atone for it, it will be considered irreparable." This is, we think, quite an accurate and clear definition and one under which, when applied to the facts and circumstances disclosed by the pleadings and evidence in the present case and enforced, it must be held that there has not been sufficient showing of irreparable injury or one which cannot be fully compensated in an action at law for damages. We are fully convinced that in such an action the appellee could receive full and adequate compensation for the loss of its right to cut or harvest the ice and for the destruction of the ice itself, or for any and all legitimate and competent elements of damage which had been suffered. For the measure of damages in such a case and a discussion of the rules applicable see *Handforth v. Maynard, supra; Stauffer v. Miller*, 25 Atl. Rep. [Pa.], 95. That a petition or application for an injunction will not be sustained in a case such as the one at bar see *Cummings v. Barrett*, 10 Cush. [Mass.], 186 ; *Marshall v. Peters*, 12 How Pr. [N. Y.], 218.

There are some other questions argued in the briefs, but as the conclusion we have reached on the points so far considered will dispose of the case, we do not deem it necessary to discuss them. The decree of the district court is reversed and a decree entered in this court vacating the injunction and dismissing plaintiff's petition at costs of plaintiff, appellee herein.

REVERSED AND DISMISSED.

RAGAN, C., took no part in the decision.