ERNEST G. TAFT & another *vs.* BRIDGETON
WORSTED COMPANY.

Worcester.    September 27, 1920. — February 28, 1921.

Present: RUGG, C. J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Watercourse*, Riparian rights.    *Malicious Conduct.*

The owner of land, who for twenty-four years had harvested ice upon a mill pond flowed upon his land by a dam owned and maintained upon its land by a mill corporation which was a lower riparian owner having flowage rights in the plaintiff's land, brought an action of tort against the mill corporation for the destruction of an ice crop by the opening of a gate and sluiceway in the dam whereby the pond was drained. The declaration contained three counts, the allegations of the first count being that the defendant committed its acts "maliciously contriving to deprive the plaintiffs of their ice harvest and the gain to accrue therefrom, and unjustly intending to aggrieve them," those of the second count being that the defendant acted "unlawfully, without reason, right or necessity," and those of the third count being that the defendant "negligently, wastefully, carelessly and unnecessarily," opened and allowed to remain open the sluiceway and gate of the dam, thereby causing the water of the pond to flow out and away and the ice forming and to be formed on the pond of value to the plaintiffs to be destroyed and to become valueless. The defendant demurred. *Held,* that

(1) Although the plaintiff had no right to compel the defendant to maintain the dam for his benefit, and the defendant had a right at any time to take down its dam or to cease to impound the water for any reason which seemed to it sufficient, the plaintiff while the dam remained had the right to harvest the ice crop subject only to the right of the defendant to use the water in a reasonable way in connection with the operation of the mill;

(2) Allegations in the declaration as to negligence and want of due care of the defendant were of no legal consequence;

(3) The allegations of the first and second counts were the equivalent of allegations of an unreasonable use of the water;

(4) *It seems* that if it were shown at the trial that, although the defendant's acts were actuated by ill will, if the use it made of the water was reasonable in accordance with the principles established in *Stratton* v. *Mount Hermon Boys' School*, 216 Mass. 83, the defendant would not be liable;

(5) The allegations of wasteful and unnecessary use of the water in the third count, in view of attendant conditions, amounted to allegations of an unreasonable use of the water and stated a cause of action.

The test of liability in the action above described is whether the defendant in what it did in the exercise of its right made a reasonable use of the impounded water, having due regard to all the circumstances connected with the right of the plaintiff to make a similar use of the water while overflowing his land, whether in fluid or solid state.

TORT for the destruction of an ice crop by the defendant in draining a mill pond upon the plaintiffs' land by raising the gates of a dam owned and maintained by the defendant upon its land. Writ dated June 30, 1919.

The material allegations in the declaration are described in the opinion. The defendant filed a demurrer to the declaration upon the ground that it set forth no breach of any legal duty owed by the defendant to the plaintiffs and that the defendant had a legal right to raise its sluice gates which was superior to any right of the plaintiffs to the ice formed on the pond. The case was argued upon demurrer in the Superior Court before *Wait*, J., who sustained the demurrer and upon motion of the defendant ordered judgment for the defendant. The plaintiffs appealed.

*H. Parker & E. H. Hewitt*, (*J. F. Thayer* with them,) for the plaintiffs.

*G. S. Taft*, for the defendant.

RUGG, C. J. This action of tort comes before us on the plaintiffs' appeal from an adverse judgment entered in consequence of sustaining the defendant's demurrer to the declaration. In the several counts of the declaration are general allegations in substance to the effect that the plaintiffs in January, 1919, were owners of land over which the defendant had flowage rights exercised by the maintenance of a dam for use in connection with its textile mill; that they have conducted for many years profitably the business of harvesting and selling the ice naturally forming on this pond in such manner as in no way to interfere with the flowage right of the defendant or to diminish the lawful use by the defendant of the waters thus impounded; and that with knowledge of these facts (count 1) the defendant, maliciously contriving to

deprive the plaintiffs of their ice harvest and the gain to accrue therefrom, and unjustly intending to aggrieve them; and (count 2) that the defendant unlawfully, without reason, right or necessity, and (count 3) that the defendant negligently, wastefully, carelessly and unnecessarily, opened and allowed to remain open the sluiceway and gate of the dam, thereby (as averred in all the counts) causing the water of the pond to flow out and away and the ice forming and to be formed on the pond of value to the plaintiffs to be destroyed and to become valueless.

There is no question of the right of the plaintiffs as owners of. the land under the pond, and subject to the flowage right of the defendant, to harvest and sell whatever ice formed on the pond. *Cummings* v. *Barrett,* 10 Cush. 186. *Paine* v. *Woods,* 108 Mass. 160, 169, 173. *Richards* v. *Gauffret,* 145 Mass. 486.

The point to be decided is whether the nature of the right of flowage is such that the defendant as owner has a legal right to draw the water of the pond in the way and manner and with the intent alleged in the several counts of the declaration.

There are intimations by way of dicta in some of our decisions to the effect that the rights of an owner in the use of his land are not absolute but are limited so that acts arising from pure malignity and spite toward his neighbor, unmixed with a genuine purpose to improve his estate, may render him liable. *Greenleaf* v. *Francis,* 18 Pick. 117, 122. *Holbrook* v. *Morrison,* 214 Mass. 209, 211.

There are other decisions which throw doubt upon the proposition that in such case liability of the landowner can spring merely from the motive with which an act is done and which, done with a benignant design, would not involve the owner in any liability. The notion that the extent of the rights of a landowner can depend upon the motive with which he acted was said not to be well founded in the common law by Mr. Justice Holmes in *Rideout* v. *Knox,* 148 Mass. 368, who at page 372, conceded "that to a large extent the power to use one's property malevolently, in any way which would be lawful for other ends, is an incident of property which cannot be taken away even by legislation. It may be assumed, that, under our Constitution, the Legislature would not have power to prohibit putting up or maintaining stores or houses with malicious intent, and thus to make a large

part of the property of the Commonwealth dependent upon what a jury might find to have been the past or to be the present motives of the owner." *Walker* v. *Cronin*, 107 Mass. 555, 563, 564. *Brostrom* v. *Lauppe*, 179 Mass. 315. *Leonard* v. *Leonard*, 181 Mass. 458. See instructive opinion in *Falloon* v. *Schilling*, 29 Kans. 292, by Mr. Justice Brewer, later of the United States Supreme Court. See, also, article by Ames, 18 Harv. Law Rev. 411, 414–416, for collection of authorities on tort because of wrongful motive; "Collected Legal Papers" of Mr. Justice Holmes, pages 120 to 122; cases collected in notes 62 L. R. A. 673.

The case at bar stands upon a different footing. It does not depend upon that principle. For the purposes of this case it is not necessary to discuss it nor to determine its limitations. The defendant, although the owner of the dam, gate, sluiceways and mill, was not the owner of the water impounded in the pond. It had no right of exclusive appropriation and dominion over it. The only property interest in flowing water is usufructuary. Respecting such rights it was said in *Stratton* v. *Mount Hermon Boys' School*, 216 Mass. 83, at page 85, with ample citation of authorities: "The right of each riparian owner is to have the natural flow of the stream come to his land and to make a reasonable and just use of it as it flows through his land, subject, however, to the like right of each upper proprietor to make a reasonable and just use of the water on its course through his land and subject further to the obligation to lower proprietors to permit the water to pass away from his estate unaffected except by such consequences as follow from reasonable and just use by him. . . . What is a reasonable and just use of flowing water is dependent upon the state of civilization, the development of the mechanical and engineering art, climatic conditions, the customs of the neighborhood and the other varying circumstances of each case. Often the amount and character of the flow may be modified to some extent by such use, for which, even though injurious to other proprietors, no action lies. A stream may be so small that its entire flow may be abstracted by the ordinary domestic uses of a farmer. Its bed may be so steep that its rational utilization for the generation of power requires its impounding in numerous reservoirs. But whatever the condition, each riparian owner must conduct his operations reasonably in view of like rights and

obligations in the owners above and below him. The right of no one is absolute but is qualified by the existence of the same right in all others similarly situated. The use of the water flowing in a stream is common to all riparian owners and each must exercise this common right so as not essentially to interfere with an equally beneficial enjoyment of the common right by his fellow riparian owners. Such use may result in some diminution, obstruction or change in the natural flow of the stream, but the interference cannot exceed that which arises from reasonable conduct in the light of all circumstances, having due regard to the exercise of the common right by other riparian owners." These principles ordinarily have been invoked by a lower riparian proprietor against infringement by a proprietor higher up on the stream. They are equally applicable in behalf of either when the circumstances are appropriate for their operation. *Walker Ice Co.* v. *American Steel & Wire Co.* 185 Mass. 463.

In the case at bar the plaintiffs as riparian owners had the right to harvest the ice upon the pond, subject only to the right of the defendant to use the water in a reasonable way in connection with the operation of its mill. Their probable ice harvest was wholly subject to the right of the defendant reasonably to use the flow of the stream in connection with its mill. The right of the defendant for that end was dominant and that of the plaintiffs was entirely subservient to that end. But the right of the plaintiffs was not subject to the whim, caprice or malice of the defendant in appropriation of the water. Of course the plaintiffs had no right to compel the defendant to maintain its dam for their benefit. The defendant had a right at any time to take down its dam or to cease to impound the water for any reason which seemed to it sufficient. With such conduct the plaintiffs have no legal concern. *Lakeside Manuf. Co.* v. *Worcester,* 186 Mass. 552. *Flagg* v. *Concord,* 222 Mass. 569, 573. *Mason* v. *Whitney,* 193 Mass. 152. But they are not strangers to the water; they have some rights in it. While this right is somewhat precarious, it is not wholly nebulous. It is more substantial than the expectation by an adjoining landowner of continuance of a fine prospect over and across his neighbors' field or woodland. It is a right secure against irrational conduct of another whose only right in the water is usufructuary and not absolute.

The allegations in the plaintiffs' declaration as to negligence and want of due care, are of no legal consequence. The allegations of the first count are to the effect that malice and a purpose to injure the plaintiffs was the sole motive by which the defendant was actuated. That is the equivalent of an allegation of an unreasonable use of the water. If it should turn out at the trial that, although that evil motive existed, nevertheless the use made by the defendant of the water was reasonable in accordance with the principles stated in *Stratton* v. *Mount Hermon Boys' School,* 216 Mass. 83, then the plaintiffs cannot recover. The exercise by the defendant of its right as riparian owner in a rational manner cannot subject it to legal liability although at the same time the injury thereby wrought to the plaintiffs may gratify its ill will. *Holbrook* v. *Morrison,* 214 Mass. 209.

As the case comes up on demurrer to the declaration, it is not necessary to discuss further the governing principles. It is enough to say that the first two counts contain allegations sufficient in law to state a cause of action. In the third count the allegation of wasteful and unnecessary use of the water is the equivalent, in view of the other attendant conditions, to an unreasonable use of the water under all the circumstances, and hence states, although in rather attenuated terms, the breach of a legal duty. However the pleadings may be phrased, the test of liability is whether the defendant in what it did in the exercise of its right made a rational use of the impounded water, having due regard to all the circumstances connected with the right of the plaintiffs to make a similar use of the water while overflowing their land, whether in fluid or solid state.

The result here reached is the same as in *Stevens* v. *Kelley,* 78 Maine, 445, and *Eidemiller Ice Co.* v. *Guthrie,* 42 Neb. 238, but it rests upon different reasons. See *Valentino* v. *Schantz,* 216 N. Y. 1.

It has not been argued that as matter of law the defendant as a corporation may not be liable in this form of action. See *Reed* v. *Home Savings Bank,* 130 Mass. 443; *White* v. *Apsley Rubber Co.,* 194 Mass. 97; *Mills* v. *W. T. Grant Co.* 233 Mass. 140.

In the opinion of a majority of the court, the judgment is reversed, the defendant has leave to answer, and the case then is to stand for trial.

*So ordered.*