PERE MARQUETTE RAILWAY CO. v. SIEGLE.

WATERS AND WATERCOURSES—MANIPULATION OF DAM—RIGHT TO
HARVEST ICE.
   While lessee of land under mill pond is not entitled to have dam,
   owned by others, operated for its benefit, it is entitled to have
   it operated reasonably, so as not to interfere with formation
   or harvesting of ice.

Appeal from Clare; Hart (Ray), J. Submitted
June 15, 1932. (Docket No. 39, Calendar No. 36,414.)
Decided September 16, 1932. Rehearing denied
January 25, 1933.

Bill by Pere Marquette Railway Company against
Fred Siegle and another to enjoin manipulation of
certain dam flash-boards to prevent formation of
ice. Cross-bill by defendants to enjoin harvesting
of ice by plaintiff. Decree for defendants on cross-
bill. Plaintiff appeals. Reversed, and decree for
plaintiff ordered.

*John C. Shields* and *Arthur W. Penny,* for plain-
tiff.

*Charles H. Goggin, Paul R. Cash,* and *Robert H.
Baker,* for defendants.

BUTZEL, J. Tobacco river and Littlefield creek
flow over a large part of the north half of the south-
east quarter of section 26, in township 17 north, of
range 5 west, near Farwell, Clare county, Michigan.
The lands, together with those adjoining, belonged
to Edmund Hall in the year 1870, when he built a
dam with a head of 9 feet of water across the

On liability of owner of flowage rights for drawing off water,
preventing the harvesting of ice by the owner of the property over-
flowed, see annotation in 13 A. L. R. 932; 29 A. L. R. 1325.

Tobacco river for logging purposes. The water flowing over the lands forms a mill pond. Three or four years after Hall built the dam, George L. Hitchcock built the present dam for a grist mill some 40 or 50 feet from the site of the original Hall dam which had been washed out. The dam is located near the northeast corner of the southwest quarter, while the mill nearby is located in the northwest corner of the southeast quarter, all of the southeast quarter of section 26. The property northeast of the dam, including the major portion of the land inundated by the mill pond, was acquired from Hall by Josiah L. Littlefield, grantor of plaintiff, Pere Marquette Railway Company. Littlefield and Hitchcock used the mill pond, the former for floating and storing logs, and afterwards for the harvesting of ice, and the latter for the grist mill. In 1901, the property over which the mill pond flowed as well as that adjacent thereto was divided on a map by drawing a diagonal line across the mill pond. Alice Hitchcock, who subsequently became Mrs. Fuller, and became the owner of the grist mill property, took or was apportioned approximately the two acres of submerged land south of the diagonal line, while Littlefield retained record title to the property north of the line. In 1915, Mrs. Fuller and husband mortgaged the lands and "grist mill property situate thereon," all south of the diagonal line, to the Farwell State Savings Bank. A number of years previous to 1918, Fuller and Littlefield derived a small amount for the privilege of cutting and removing ice from the pond from a third party who erected an ice house on the property. The village of Farwell has secured its water supply from the pond since 1880. On October 24, 1918, plaintiff entered into a written lease with Fuller and Littlefield

under which it secured the right to remove ice from the pond. The lease is duly recorded, and provides for a term of three years and two successive renewals of 10 years each. The lease was renewed at the end of three years. Plaintiff purchased property a short distance north of the mill and erected a large ice house at considerable cost.

Littlefield, who is 86 years of age and one of the original settlers in the vicinity of Farwell, is a man of highest probity and president of the Farwell Savings Bank. In 1925 and 1926, the bank acquired title from Mr. and Mrs. Fuller by deeds. In 1927, the bank interested defendants in the purchase of the mill. The cashier of the bank prior to the sale to defendants told them that Littlefield had rights in the flowage. Plaintiff's lease was on record and its ice house was of such large proportions that defendants must have seen it and known its purpose. With notice of these facts, defendants entered into an agreement to purchase the property for $10,000 on land contract and have paid in part for it. The contract is silent as to flowage rights, and it is not only significant but fatal to defendants' claims that, within a week after the execution of the land contract, they made a written lease with Littlefield and wife for the flowage rights to the extent of maintaining a head of water at such level as might be held by the present dam, and that "in no case shall the water be held higher than above specified." A rental of $50 per year, specified in the lease, was paid by defendants for two years, and then they abandoned the lease and refused to make further payments. They claim that the flowage rights went with the dam, and that they could tack on the rights of the previous owners so as to create a perfect right by prescription. They further claim that the pur-

chase of the mill necessarily included flowage rights. Plaintiff purchased Littlefield's rights in the lease and the property submerged by the pond with the exception of the two acres, or thereabouts, adjoining the mill and north of the diagonal line, which is included in defendants' contract of purchase. The water of the pond and the tributary streams has been low for the past two years owing to a drought. This undoubtedly, as the trial judge found, is a contributing cause of the present litigation. In 1930, defendants brought suit to enjoin plaintiff from taking ice from the two acres of the pond covered by the contract. Although this suit was discontinued, plaintiff quite pertinently contends that it indicates that defendants recognized that they only had exclusive rights in the pond to the extent of the two acres set forth in the land contract. In February, 1931, defendants manipulated the flash boards of the dam in a manner so as to prevent the formation of ice, and plaintiff was only able to harvest a very small amount of ice. Plaintiff brought this suit to enjoin defendants from manipulating the flash-boards of the dam or doing any other acts so as to prevent the ice from forming. Defendants in a cross-bill sought to enjoin plaintiff from cutting ice so as to disturb the flowage of water over the dam. The lower court rendered a decree in favor of defendants as cross-plaintiffs.

Many cases are cited, but none of them present the present state of facts. The issue has been limited by the abandonment of any claims on the part of plaintiff to the flowage rights except in so far as to retain the full and complete right to harvest ice, during the brief ice-forming period of the year, without any interference on the part of defendants so as to prevent the formation or harvesting of the

ice. There is no question but that defendants are not required to operate the dam for plaintiff's benefit. *Goodrich* v. *McMillan,* 217 Mich. 630 (26 A. L. R. 801). But as long as it is maintained, it must be controlled so as not to interfere with plaintiff's ice. The facts clearly show a priority in favor of plaintiff and the reciprocal subordination of defendants' rights to those of plaintiff to the extent that the ice may be formed and harvested by plaintiff without any improper interference on defendants' part. Under the circumstances, plaintiff has the right to have the owner of the dam manipulate it reasonably so as not to interfere with the formation or harvesting of the ice. Although no evidence was introduced to show that the flash-boards were maliciously or unnecessarily raised or lowered, we are impressed with the principles laid down in *Taft* v. *Bridgeton Worsted Co.,* 237 Mass. 385 (130 N. E. 48, 13 A. L. R. 928); also (same case) 246 Mass. 444 (141 N. E. 119, 29 A. L. R. 1319).

The decree of the lower court is reversed, with costs, and one may be entered in favor of plaintiff in accordance with this opinion.

Clark, C. J., and McDonald, Potter, Sharpe, North, Fead, and Wiest, JJ., concurred.