POMPEO LABBADIA ET AL. *v.* ROBERT F. BAILEY ET AL.

THE NOYES SCHOOL OF RHYTHM, INC., ET AL. *v.*
ROBERT F. BAILEY ET AL.

KING, MURPHY, MELLITZ, SHEA and ALCORN, Js.

Argued October 13—decided December 30, 1959

*Carlos B. Ellis,* with whom were *Charles P. Bu-fithis* and *Arthur R. Moor,* for the appellants (named defendant et al.) in each case.

*John M. Donahue,* with whom was *Colin C. Tait,* for the appellees (named plaintiff et al.) in the first case.

*John C. Parsons,* with whom was *Colin C. Tait,* for the appellees (plaintiffs) in the second case.

KING, J. These two cases, which were tried together, concern rights in Great Hill Lake, an artificial body of water of about seventy-five acres located in the town of Portland. Other controversies concerning rights in this lake were before us in *Great Hill Lake, Inc.* v. *Caswell,* 126 Conn. 364, 11 A.2d 396. We restrict our present discussion to certain basic issues which are dispositive of each appeal.

The plaintiffs claim to own interests in land in part abutting, and in part under the waters of, the lake. As shown by the pleadings, the plaintiffs' basic complaint is that certain conduct of the defendants in the maintenance of a dam which impounds the waters of the lake and in the operation of a gate at the base of the dam has resulted in a

partial draining of the lake and a consequent depreciation in the value of the plaintiffs' properties. This conduct of the defendants is alleged in the complaint in the Labbadia case to constitute a breach of a covenant running with the land, and in the complaint in the Noyes case to be an invasion of prescriptive rights acquired by the schools, as riparian owners, by reason of the long use of their lake-front property as a camp and of the waters of the lake for recreational and other purposes.

The plaintiffs in the first case are Pompeo and Maria Labbadia, owners of land at the south end of the lake near the dam, and Louis and Mary Labbadia, lessees of Pompeo and Maria. The defendants are River Road, Inc., the present owner of record of the dam, of contiguous land beneath the surface of the lake, and of flowage rights, and Mary H. Bailey and Robert F. Bailey, who were, in succession, former owners thereof. River Road acquired its title from Robert, who is the president and treasurer of the corporation. The trial court rendered judgment awarding nominal damages and granting injunctive relief to the plaintiff owners as against River Road and Robert. It found the issues in favor of the defendant Mary H. Bailey, and in favor of the other defendants as against the plaintiff lessees. Since neither of the plaintiff lessees appealed, nor did any of the plaintiffs appeal from the judgment in favor of the defendant Mary H. Bailey, the rights of the plaintiff lessees and the duties and liability of the defendant Mary H. Bailey are no longer in issue.

The findings are not subject to any corrections material to our disposition of these appeals. Prior to the close of World War I, the lake and the dam, which have existed for about 100 years, were used

for water power by lower riparians. There is an iron pipe lying approximately at the level of the bed of the lake and running through the lower portion of the dam. By opening a gate in this pipe as necessary, water was released from the lake, especially when the spillway on top of the dam was not being overflowed, to supply the needs of the lower riparian millowners. At night, when the mills were not running, the gate was closed and the water was allowed to accumulate in the lake. After World War I, operation of the gate ceased. It remained closed until August, 1957, when Robert, who then owned the dam, some of the submerged land and certain flowage easements, removed the gate, thereby allowing the level of the lake to fall. Record title to Robert's interests passed, on September 14, 1957, to River Road. Thereafter, the level of the lake continued to fall. On October 31, 1957, debris which clogged the pipe was removed by dynamite, increasing the flow of water out of the lake, and by November, 1957, the water in the lake was some six feet below the spillway. Robert and owners of other properties on the lake, largely during September and October, 1957, took advantage of the low water and made repairs to their beaches. In November, 1957, the state water resources commission caused the dam to be inspected. On June 4, 1958, the commission declared the dam to be unsafe and ordered that on or before August 31, 1958, extensive alterations and repairs, of an estimated cost of from $7500 to $9500, be made, or, in the alternative, that the dam be removed. In May, 1958, the present suits were instituted, each seeking damages and a mandatory injunction compelling the defendants to repair the dam and to "maintain the water in the lake at its normal level." On May 26, 1958, a tem-

porary injunction was issued enjoining the defendants from "tampering" with the dam. This injunction has been obeyed.

The trial court found that the lowering of the water of the lake had damaged the plaintiffs' properties by leaving them far back from the water. It awarded nominal damages of $50 in each case and granted injunctive relief commanding Robert and River Road to repair the dam "in accordance with the requirements of plaintiffs' Exhibit K" and thereafter to keep the dam in repair so as to maintain the water in the lake at its normal level. Exhibit K was a report to the water resources commission by engineers who inspected the dam.

In the interest of proper procedure, we point out that a judgment should not incorporate an exhibit, since without a special order an exhibit does not remain part of the file. Practice Book §§ 206, 207. Upon removal of the exhibit, the judgment ceases to have precision of meaning. The rule is of particular importance in cases such as these, where injunctive relief is granted and it becomes essential that the defendant be able to determine from the judgment, with practical certainty, what conduct on his part is required or prohibited. *William Rogers Mfg. Co.* v. *Rogers,* 38 Conn. 121, 125; *Baldwin* v. *Miles,* 58 Conn. 496, 502, 20 A. 618; *Walden* v. *Siebert,* 102 Conn. 353, 359, 128 A. 702; *Palverari* v. *Finta,* 129 Conn. 38, 40, 26 A.2d 229.

Pompeo and Maria Labbadia, husband and wife, hereinafter referred to as the Labbadias, purchased their premises from William S. Hyde and Ernest C. Halliday on September 9, 1947. Besides the land sold to the Labbadias, Hyde and Halliday owned adjoining land, on a portion of which stood the dam. An undivided one-half interest in this retained prop-

erty, with easements of flowage, was subsequently conveyed to Robert in 1955 by a deed from the heirs of Hyde, and the other one-half interest was conveyed to Robert in 1957 by the heirs of Halliday.

In the deed from Hyde and Halliday to the Labbadias, the following language appeared after the description of the land conveyed. "The grantors herein agree for themselves, their heirs and assigns with the grantees herein, their heirs and assigns, to keep in repair and maintain at its present level the dam located on other land of the grantors herein, next northeasterly of the land herein conveyed." The Labbadias claim that this language constitutes a covenant running with the land. For present purposes we may assume, without so deciding, that under our law the covenant was a valid, enforceable covenant running with the land. See *Brown* v. *Connecticut Light & Power Co.,* 145 Conn. 290, 299, 141 A.2d 634; *Carlson* v. *Libby,* 137 Conn. 362, 367, 77 A.2d 332; *Randall* v. *Latham,* 36 Conn. 48, 53. The trial court construed the covenant as one to maintain the level of the lake. In this construction there was error. The covenant was twofold, (a) to keep the dam in repair, and (b) to maintain the level of the dam, not that of the lake. Whether, if the dam was kept in repair and its level maintained, a usual result would be the maintenance of the level of the lake is not the question here. The obvious reason for the precise language used was the necessity of respecting and protecting the right of lower riparians to a reasonable flow of water under the rule of cases such as *Mason* v. *Hoyle,* 56 Conn. 255, 263, 14 A. 786. The Labbadias' right is to enforce the covenant as written, not some other or different covenant. The court found that the level of the dam had not been altered by any of the defendants.

Thus, there was no breach of this portion of the covenant.

The only remaining basis of liability within the purview of the allegations of the Labbadias' complaint is on the theory of a breach of the first part of the covenant, the agreement to keep the dam in repair. Since the judgment for damages and equitable relief was predicated at least in part on a misinterpretation of the second part of the covenant, the judgment cannot stand, and a new trial must be had. In an endeavor to expedite this litigation, we briefly point out that the injunction improperly purported to order compliance with one of the alternative orders of the water resources commission, which was not even a party to this litigation. The function of the commission was to exercise certain police powers delegated to it by the state. General Statutes §§ 25-110—25-119. It was not the function of the commission to enforce any covenant the Labbadias might have, nor did it attempt so to do. If through a valid exercise of its police powers the commission formulated requirements as to the upkeep of the dam which made more burdensome any obligation the defendants might have under the covenant to repair, that obligation would nevertheless still exist. There was no necessary inconsistency between the obligation under the covenant and that imposed by the commission. Any injunction commanding the repair of the dam pursuant to the terms of the covenant should follow those terms and not attempt to enforce orders of the commission. As far as the commission's requirements were concerned, the defendants could have satisfied them by complying with the alternative portion of the order and removing the dam.

The second case was instituted by The Noyes

School of Rhythm, Inc., and The Noyes School of Rhythm for Children, Inc., hereinafter referred to as the schools. These two corporations sought, and were granted, substantially the same relief as the Labbadias. The land belonging to the schools was located at the upper end of the lake and was in part submerged, and the principal difference between the two cases was that the schools based their claims as to the defendants' duty to maintain and repair the dam on prescription. The claimed prescriptive use of the waters of the lake by the schools in connection with their riparian land was for swimming, boating, fishing and, if needed, fire protection. Even if we assume, without deciding, that the schools could acquire by prescription, and had acquired, the easement they claim, appurtenant to their land, they would not thereby have the right to compel the defendants to maintain and repair the dam. Notes, 26 A.L.R. 804, 88 A.L.R. 130, 131. Indeed, the schools would have no such right, in the absence of express language creating it, even had their easements been by grant from the owner of the dam. *Taft* v. *Bridgeton Worsted Co.,* 237 Mass. 385, 389, 130 N.E. 48, 13 A.L.R. 928, and note, 932; *Gager* v. *Carlson,* 146 Conn. 288, 292, 150 A.2d 302. The issuance of the mandatory injunction compelling the repair of the dam was erroneous.

Whether, if we assume that the schools acquired by prescription the easement they claim, they would be entitled to maintain the dam at their own expense and risk, if the defendants chose to abandon it, is a matter not before us. The schools sought no such relief in their complaint. Their obvious objective was to compel the maintenance of the dam for their benefit and profit, without expense or risk on their part. See *Adams* v. *Manning,* 51 Conn. 5, 7; *Gager*

v. *Carlson*, supra. The complaint in some respects is lacking in precision, but even if it can be construed as alleging a second cause of action for the wanton lowering of the pond to the damage of the claimed riparian rights of the schools, under the rule of cases such as *Bierce* v. *Sharon Electric Light Co.*, 73 Conn. 300, 301, 47 A. 324, *DeWitt* v. *Bissell*, 77 Conn. 530, 535, 60 A. 113, and *Taft* v. *Bridgeton Worsted Co.*, supra, the finding lacks the facts essential to the support of such a cause of action.

In the first case, there is error as to the judgment appealed from, that is, the judgment in favor of Pompeo and Maria Labbadia as against Robert F. Bailey and River Road, Inc.; the judgment as to them is set aside and a new trial is ordered.

In the second case, there is error as to the judgment appealed from, that is, the judgment in favor of the plaintiffs as against Robert F. Bailey and River Road, Inc.; the judgment as to them is set aside and a new trial is ordered.

In this opinion the other judges concurred.